## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.

APR ENERGY, LLC,

     Plaintiff,

vs.

AMERICAN POWER HOLDINGS, LLC,
AMERICAN POWER RESOURCES LLC,
AMERICAN POWER REALTY LLC,
APR RENEWABLES LLC, APR GREEN
ASSETS LLC, APR GREEN DATA LLC,
BENJAMIN CHURCH, Individually, and ADANAN
JAVAN, a/k/a AJ JAVAN, Individually,

     Defendants.

_____/

### VERIFIED COMPLAINT

Plaintiff APR Energy, LLC ("APR Energy" or "Plaintiff") sues Defendants American Power Holdings, LLC, American Power Resources LLC, American Power Realty LLC, APR Renewables LLC, APR Green Assets LLC, and APR Green Data LLC (together, "American Power Entities"), Benjamin Church, individually, ("Ben Church" or "Church") and Adanan Javan, individually ("AJ Javan" or "Javan"), and alleges:

### I.    NATURE OF ACTION

1.    This is an action by Plaintiff against the American Power Entities, Ben Church, and AJ Javan (together, "Defendants").

2.    Plaintiff seeks damages from (1) Defendants' trademark infringement, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*, trademark infringement and unfair competition under 15 U.S.C. § 1114(a), *et seq.*, trademark

1

infringement and unfair competition under Florida common law, violation of the Florida Uniform Trade Secrets Act, and violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*; (2) Ben Church's breaches of his contracts with Plaintiff, breaches of his fiduciary duties to Plaintiff and its members, unjust enrichment, and fraudulent misrepresentations; (3) the American Power Entities' tortious interference with Plaintiff's contracts with Ben Church and aiding and abetting Church's breach of his fiduciary duties to Plaintiff and its members; and (4) AJ Javan and the American Power Entities' violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), *et seq.*

3.     Plaintiff seeks temporary and permanent injunctive relief because Plaintiff has suffered and will continue to suffer serious, substantial, and irreparable injury unless Defendants are enjoined.

4.     Plaintiff also seeks, pursuant to the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(C), either the transfer of the domain names apr.energy, aprenew.com, and any other domain name beginning with "apr" from Javan and the American Power Entities to Plaintiff, or the forfeiture or cancellation of Javan and the American Power Entities' registration, ownership, and use of such domain names.

## II.     PARTIES

5.     Plaintiff APR Energy is a limited liability company organized and existing under the laws of the State of Florida. Its principal place of business is located at 4600 Touchton Road, Building 100, Suite 500, Jacksonville, FL 32246. Atlas Corp. is the ultimate parent company of Plaintiff and its affiliates.

6.      American Power Holdings, LLC is a limited liability company organized and existing under the laws of the State of Florida. Its principal place of business is located at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, FL 33408.

7.      American Power Resources LLC is a limited liability company organized and existing under the laws of the State of Florida. Its principal place of business is located at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, FL 33408.

8.      American Power Realty LLC is a limited liability company organized and existing under the laws of the State of Florida. Its principal place of business is located at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, FL 33408.

9.      APR Renewables LLC is a limited liability company organized and existing under the laws of the State of Florida. Its principal place of business is located at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, FL 33408.

10.     APR Green Assets LLC is a limited liability company organized and existing under the laws of the State of Florida. Its principal place of business is located at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, FL 33408.

11.     APR Green Data LLC is a limited liability company organized and existing under the laws of the State of Florida. Its principal place of business is located at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, FL 33408.

12.     Ben Church is a natural person over the age of 21 and is otherwise *sui juris*. Church is domiciled in the State of Florida and resides in Martin County, Florida.

13.     AJ Javan is a natural person over the age of 21 and is otherwise *sui juris*. Javan is domiciled in the State of Florida and resides in Palm Beach County, Florida.

### III.   JURISDICTION AND VENUE

14.     This action is brought pursuant to various federal and state statutes, including the Lanham Act, 15 U.S.C. § 1051 *et seq.*, Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), *et seq.*, and Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* This Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338(a)–(b), 15 U.S.C. § 1121, and 18 U.S.C. § 1836(c).

15.     This Court also has supplemental jurisdiction over the state law claims raised below pursuant to 28 U.S.C. § 1367(a), because all claims alleged herein form part of the same case or controversy as the claims over which the Court has federal question subject-matter jurisdiction.

16.     This Court has personal jurisdiction over the American Power Entities. The Court may exercise general jurisdiction over the American Power Entities because each of the American Power Entities was formed in Florida and has its principal place of business in Florida. The Court may also exercise specific jurisdiction over the American Power Entities because Plaintiff's claims arise out of, and relate to, those Defendants' activities within the State of Florida. The Florida Long Arm Statute, specifically Florida Statutes Sections 48.193(1)(a)(1)–(2) authorizes the exercise of jurisdiction over each of the American Power Entities because Plaintiff's claims against the American Power Entities arise from the American Power Entities' "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state," and "[c]ommitting a tortious act within this state." The Florida Long Arm Statute, specifically Florida Statutes Section 48.193(1)(a)(2), also authorizes the exercise of jurisdiction over the American Power Entities because they are "engaged in substantial and not isolated activity within" the State of Florida.

17.     This Court has personal jurisdiction over Ben Church. The Court may exercise general jurisdiction over Church because he is a resident of, and domiciled in, in the State of Florida. The Court may also exercise specific jurisdiction over Church because Plaintiff's claims arise out of, and relate to, Church's activities within the State of Florida. The Florida Long Arm Statute, specifically Florida Statutes Sections 48.193(1)(a)(1)–(2), (7), and (9) authorizes the exercise of jurisdiction over Church because Plaintiff's claims against Church arise from his "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state," "[c]ommitting a tortious act within this state," "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state," and "[e]ntering into a contract that complies with [Florida Statutes Section] 685.102." The Florida Long Arm Statute, specifically Florida Statutes Section 48.193(1)(a)(2), also authorizes the exercise of jurisdiction over Church because he is "engaged in substantial and not isolated activity within" the State of Florida.

18.     This Court has personal jurisdiction over AJ Javan. The Court may exercise general jurisdiction over Javan because he is a resident of, and domiciled in, in the State of Florida. The Court may also exercise specific jurisdiction over Javan because Plaintiff's claims arise out of, and relate to, Javan's activities within the State of Florida. The Florida Long Arm Statute, specifically Florida Statutes Sections 48.193(1)(a)(1)–(2), (7), and (9) authorizes the exercise of jurisdiction over Javan because Plaintiff's claims against Javan arise from his "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state" and "[c]ommitting a tortious act within this state." The Florida Long Arm Statute, specifically Florida Statutes Section 48.193(1)(a)(2), also authorizes the exercise of jurisdiction

over Javan because he is "engaged in substantial and not isolated activity within" the State of Florida.

19.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)–(c) because Defendants are residents of Florida and reside within this district, Defendants are subject to personal jurisdiction in this judicial district, Defendants' contacts with this district are regular and purposeful, and a substantial part of the events or omissions giving rise to the claims in this action arose or occurred in this district.

## IV.     FACTUAL BACKGROUND

### A.     *Plaintiff Assists Clients in Generating Electricity and Competes in the Market for Electricity Generation and Utility Services.*

20.     Plaintiff competes in the market for electricity generation and utility services. Customers in the market for electricity generation and utility services have multiple options for securing a supply of electricity. Plaintiff offers customers mobile gas turbine fleets, which it deploys to meet customers' electricity-generation needs. Plaintiff also offers photovoltaic and wind power solutions to meet customers' electricity-generation needs. Plaintiff also has plans to offer hydrogen energy solutions as part of its product offerings.

21.     Gas turbine fleets, photovoltaic, hydrogen, and wind solutions are among many technologies from which customers may choose for electrification. In economic terms, photovoltaic, hydrogen, gas turbine, and wind solutions are substitute goods that are part of the same product market for competition purposes because they have positive cross elasticities of demand.

22.     Plaintiff has developed capacity and expertise to build, deploy, and manage photovoltaic and wind energy solutions and plans to offer hydrogen energy solutions as part of its product offerings. It also has, among its key strategic goals, the objective of growing its

photovoltaic, wind, and hydrogen renewable operations so that it may expand its suite of product offerings to customers in the market for electricity generation and utility services.

23.     During his tenure as Chief Executive Officer of Plaintiff, Defendant Ben Church played a key role in promoting, designing, and furthering Plaintiff's goal of expanding and developing its product suite of electrification options to include renewable options including photovoltaic, wind, and hydrogen power solutions.

24.     Plaintiff also offers battery and power-storage solutions.

**B.     *Plaintiff Hired Defendant Ben Church as Its New CEO in the Summer of 2021.***

25.     In the summer of 2021, Plaintiff hired Ben Church to be its new Chief Executive Officer.  Church accepted Plaintiff's offer to be its new CEO on July 16, 2021. Church's start date at the company was August 9, 2021.

26.     As Plaintiff's CEO, Ben Church occupied a position of ultimate trust, confidence, and authority. He was the highest-ranking executive at Plaintiff and reported directly to Mr. Bing Chen, the President and CEO of Atlas Corp., the ultimate parent company of Plaintiff and its affiliates. Among his duties, Ben Church was responsible for:

- creating and implementing Plaintiff's strategic goals, including, but not limited to the company's highly confidential strategic growth plans and long-term business strategy and highly confidential strategic plans for gaining market share in target geographic and industrial markets;

- expanding Plaintiff's suite of product offerings to include renewable energy solutions;

- protecting and enhancing company culture;

- ensuring operational excellence;

- managing deal risks;

- cultivating stronger relationships with existing customers;

- gaining the trust and business of potential customers;

- ensuring customer satisfaction with Plaintiff's deliverables;

- allocating capital and resources;

- hiring senior leadership and improving employee trust and retention;

- achieving the company's highly confidential financial targets, including on revenue, EBITDA, and other metrics;

- protecting the company's intellectual property and confidential and proprietary information, including trade secrets.

27.     As Plaintiff's CEO, Ben Church gained access to Plaintiff's highly confidential and proprietary information, including its trade secrets. This information was non-public and provided Plaintiff with significant competitive advantages. Plaintiff's trade secrets included its pricing models, costing models, long-term joint venture and merger and acquisition strategies, long-term joint venture and merger and acquisition plans and targets, lists of potential and current customers, term sheets, counterparty lists and names, and asset configurations. This information derived independent economic value due to being neither generally known nor readily ascertainable through proper means by others who could obtain economic value from the disclosure or use of this information. Plaintiff complied each of these from non-public information. Plaintiff had taken, and continues to take, reasonable measures to keep secret its highly confidential and proprietary information, including its trade secrets, by measures including, but not limited to, ensuring that this information was available to only employees whose access was appropriate and necessary for the performance of their roles at Plaintiff and ensuring that employees would be bound to restrictive covenants, including, but not limited to, promises to ensure the security and secrecy of the information constituting these trade secrets. Ben Church, as the Chief Executive Officer of Plaintiff, had access to Plaintiff's highly confidential and proprietary information, including its

trade secrets, and the availability of this information to him was appropriate given the nature of his role and responsibilities.

28.     Plaintiff's pricing and costing models constitute proprietary and highly confidential information and trade secrets that would be extremely damaging to Plaintiff should it fall into a competitor's hands, as it did when Church joined the American Power Entities, as described further below. That information constitutes the means by which Plaintiff determines and evaluates the costs of projects and how they should be priced. A competitor armed with this information would be able to bid and compete more effectively against Plaintiff for future work, as it would be aware of how Plaintiff would view costs on projects and price and bid for them.

29.     Plaintiff's long-term joint venture and merger and acquisition strategies and long-term joint venture and merger and acquisition plans and targets constitute proprietary and highly confidential information and trade secrets that would be extremely damaging to Plaintiff should it fall into a competitor's hands, as it did when Ben Church joined the American Power Entities, as described further below. That information constitutes the means by which Plaintiff identifies potential acquisition targets and partners and evaluates the suitability of an acquisition or joint venture. Plaintiff's joint venture and merger and acquisition strategies and long-term joint venture and merger and acquisition plans and targets also reveal Plaintiff's analysis of marketplace dynamics, including the company's view of manufacturers or service suppliers, geographic areas, participants in those spaces, and whether those manufacturers, service suppliers, geographic markets offer profitable expansion opportunities. A competitor armed with this information would be able to insert itself into Plaintiff's acquisition or joint-venture processes, more easily locate alternative partners to compete with Plaintiff, more easily insert itself into geographic markets, and otherwise undermine Plaintiff's returns from investment.

30.     Plaintiff's term sheets and counterparty names and lists constitute proprietary and highly confidential information and trade secrets that would be extremely damaging to Plaintiff should it fall into a competitor's hands, as it did when  Church joined the American Power Entities, as described further below. That information constitutes and reflects Plaintiff's counterparties, evaluation of counterparties, evaluation of contemplated transactions, and value of contemplated transactions. Acquiring Plaintiff's term sheets or counterparty names and lists would give a competitor the opportunity to approach parties in which Plaintiff was in preliminary discussions, allow a competitor to disrupt Plaintiff's development or work with third parties, and give a competitor an unearned and wrongful ability to compete on the subject opportunity.

31.     Plaintiff's customer lists constitute proprietary and highly confidential information and trade secrets that would be extremely damaging to Plaintiff should it fall into a competitor's hands, as it did when Church joined the American Power Entities, as described further below. Plaintiff has invested extensively in developing its customer lists, which include current or past customers of the company, as well as potential customers based on forecasted or predicted potential need. Acquiring Plaintiff's customer lists would give a competitor the opportunity to approach parties in which Plaintiff has a developed relationship or has expended assets to identify or target, and in doing so, wrongfully attempt to steal or solicit the business of such customers from Plaintiff.

32.     Plaintiff's asset configurations constitute proprietary and highly confidential information and trade secrets that would be extremely damaging to Plaintiff should it fall into a competitor's hands, as it did when Church joined the American Power Entities, as described further below. That information indicates where Plaintiff's assets are placed, the availability of current electrification assets and equipment, and the fungibility of available assets to potential projects. A

competitor armed with this information would be able to bid and compete more effectively against Plaintiff for future work, as it would be aware of the limitations that Plaintiff faced in allocating assets and meeting demand.

**C.     Ben Church Owed Fiduciary Duties to Plaintiff and its Members and Entered Numerous Covenants Related to His Employment with Plaintiff.**

33.     As Chief Executive Officer and a board member of Plaintiff, Church had fiduciary duties to Plaintiff and its members under Florida law. These fiduciary duties included the duties of loyalty, care, and good faith.

34.     In connection with his hiring as Chief Executive Officer, Church entered into an Employment Contract on July 16, 2021 (the "Employment Agreement"). A copy of the Employment Agreement is attached as **Exhibit A** and incorporated herein. Falconbridge Services, LLC is an affiliate of Plaintiff. Its role, among Plaintiff and its affiliates, is to coordinate the hiring, payroll, and benefits of employees for Plaintiff and its affiliates. In other words, Falconbridge Services, LLC acts for the benefit of Plaintiff. As Church was and is aware, Falconbridge Services, LLC hired Church to act as the Chief Executive Officer of Plaintiff and all of its affiliates. The Employment Agreement was directly and primarily intended to benefit Plaintiff. This is reflected by the following, among other facts:

- The Employment Agreement required Church to sign a Non-Competition, Non-Solicitation, and Non-Interference Agreement, which specifies that Church was hired as the Chief Executive Officer of Plaintiff;

- The Employment Agreement's covenants repeatedly emphasize that they are for the protection of "the Company Group," which is entitled to preliminary and permanent injunctive relief, damages, and an equitable accounting of all earnings, profits, and other benefits in the event of a breach. The "Company Group" is defined to include Plaintiff, which is a subsidiary of Atlas Corp., affiliate of Falconbridge Services, LLC, and an entity as to which Church had responsibility, material dealings, and from which he obtained confidential information;

- The Employment Agreement required, as a condition of Church's employment, for Church to agree to the Policies listed in Section 14 of the Employment Agreement. The Policies, as alleged further below, were with Plaintiff and for the benefit of Plaintiff;

- Church was listed as the Chief Executive Officer of Plaintiff and the other APR operating entities in corporate filings;

- Church was listed as the Chief Executive Officer of Plaintiff—and repeatedly described himself as such—in public comments and documents;

- Church was a board member and officer of Plaintiff and Plaintiff's affiliated entities.

35.     The Employment Agreement included covenants of confidentiality and non-disclosure. Church acknowledged that he would receive access to "confidential and proprietary information" of Plaintiff, including, but not limited to, "information received from third parties under confidential conditions, business plans, customer lists, customer files, products and services offered or in development, strategic direction, marketing strategies and plans, software, designs, procedures, formulas, processes, financial data and results of operations; and . . . other know-how, ideas, concepts, trade secrets, and methodologies . . . ." Ex. A ¶ 10. Church agreed not to disclose, and to maintain the confidentiality of, this information. *Id.*

36.     The Employment Agreement also required Church to return, upon the termination of his employment "for any reason or at any time upon the Company's request . . . all documents, materials, and computer media in any form . . . belonging to the Company Group or otherwise containing Confidential Information and all other property of the Company Group in or under your possession or control." *Id.* ¶ 11.

37.     On August 30, 2021, Church signed an acknowledgment (the "Ethics Acknowledgment") of having received and read the Code of Business Conduct and Ethics Policy of Atlas Corp., which Atlas Corp. promulgates primarily and directly for the benefit of itself and

its subsidiaries, including Plaintiff. The Ethics Acknowledgement is attached as **Exhibit B** and incorporated herein. In the Ethics Acknowledgment, Church agreed that he understood "his obligations" under the Code of Business Conduct and Ethics Policy and promised to "undertake, as a condition to [his] present and continued employment at, appointment to the Board, or other affiliation with Atlas, to comply with the principles, policies and laws outlined in the Code of Business Conduct and Ethics Policy." Ex. B.

38.     The Code of Business Conduct and Ethics Policy, which is attached as **Exhibit C** and incorporated herein, prohibits Church from "discussing or disclosing any confidential information about Atlas unless properly authorized to do so. This would include sharing information with any external third-party, as well as limiting the sharing of information within Atlas on a 'need to know' basis only. This requirement remains in effect during and after employment with Atlas." Ex. C at 11.

39.     The Code of Business Conduct and Ethics Policy also includes covenants on conflicts of interest. Pursuant to Church's assent to the Code of Business Conduct and Ethics Policy, Church was prohibited from

- "being employed by any business that competes, directly or indirectly, with Atlas;"

- "[h]aving a direct or indirect personal financial relationship with a competitor, customer, or supplier . . . ;" or

- [e]ngaging in any other employment or extensive personal projects during work hours, or using Atlas property in other employment[.]"

*Id.* at 15.

40.     On August 30, 2021, Church agreed to Plaintiff's Conflict of Interest Policy, which is attached as **Exhibit D** and incorporated herein. Church's Employment Agreement with Plaintiff

also incorporated the terms of certain policies, including, but not limited to, the Conflict of Interest Policy. Ex. A ¶ 14.

41.     The Conflict of Interest Policy states that a "conflict of interest exists when a personal interest interferes or appears to interfere with business practices of the ability to make objective business decisions." Ex. D. Among conflicts of interest listed are "[c]ompeting with APR Energy" and "[f]inancial interests in certain businesses." *Id.* In agreeing to the Conflict of Interest Policy, Church agreed to "report any known or perceived conflicts of interest to [his] Manager or Human Resources, as well as the Legal and Compliance Department." *Id.*

42.     On August 30, 2021, Church agreed to Plaintiff's Confidentiality and Assignment of Proprietary Rights Agreement, which is attached as **Exhibit E** and incorporated herein. Church's Employment Agreement with Plaintiff also incorporated the terms of certain policies, including, but not limited to, the Confidentiality and Assignment of Proprietary Rights Agreement. Ex. A ¶ 14.

43.     The Confidentiality and Assignment of Proprietary Rights Agreement provided that "[i]n consideration of the Company's employment or the continued employment of [Church], the Company and [Church] have agreed that [Church] will keep all Confidential Information confidential and that all Work Product (and all property rights related to Work Product) are owned and shall belong to the Company, on the terms and conditions set forth below." Ex. E at 1.

44.     The Confidentiality and Assignment of Proprietary Rights Agreement defined "Confidential Information" as:

> any nonpublic information that the Company designates as being confidential or which relates in any way to the Company's business including, but not limited to: (i) trade secrets, personnel lists, client lists and prospects, business opportunities, financial information, research, services used, pricing, product sourcing, marketing strategies and methods, business strategy, equipment design and technical specifications, and other proprietary information . . . (whether written, printed, on

computer diskette, hard drive or tape, machine or user readable or otherwise) relating in any way to the Company's existing and proposed business; (ii) the terms and conditions of any proposed or actual contract concerning the Company's products or services; and (iii) any other information pertaining thereto, whether in tangible media or in any other form.

*Id.*

45.     Under the Confidentiality and Assignment of Proprietary Rights Agreement, Church is obligated to "protect and preserve the confidentiality of the Confidential Information, and shall not disclose, permit disclosure of, transfer, or otherwise make available the Confidential Information to any person or entity without the prior written consent of the Company." *Id.*

46.     The Confidentiality and Assignment of Proprietary Rights Agreement also provides that Church "shall be responsible for any misuse of the Confidential Information or other breach of this Agreement by anyone who obtains access to the Confidential Information through the Employee without authorization of Company." *Id.*

47.     The Confidentiality and Assignment of Proprietary Rights Agreement defines "Work Product" as

all inventions, discoveries, improvements, trade secrets, formulas, techniques, data, programs, systems, specifications, documentation, source codes, processes, and other information, including works-in-progress or previously created by the Employee, whether or not subject to patent, trademark, copyright, or trade secret protection, and whether or not reduced to practice, which are made, created, authored, conceived, or reduced to practice by the Employee, either alone or jointly with others, during the period of the Employee's employment by the Company which: (i) relate in any way to the actual or anticipated business, activities, research, or investigations of the Company; (ii) result from or are suggested by work performed by the Employee for the Company (whether or not made or conceived during normal working hours or on the premises of the Company); or (iii) which result, to any extent, from use of Company's premises or property.

*Id.* at 2.

48.     Under the Confidentiality and Assignment of Proprietary Rights Agreement, Church "disclaims any and all interest in any work product," pledges to assist the Company in

enforcing its rights to its work product, and agrees, in the event of his termination from the company "for whatever reason" to promptly

> (i) deliver to the Company all physical property, discs, documents, notes, printouts, and all copies thereof and other materials in the Employee's possession or under the Employee's control pertaining to the Company's business, including, but not limited to, those embodying or relating to Confidential Information or Work Product; (ii) deliver to the Company all notebooks, workpapers, and other data relating to research or experiments or other work conducted by the Employee in the scope of the Employee's employment, and any Work Product made, created, authored, conceived, or reduced to practice by the Employee, either alone or jointly with others; and (iii) make full disclosure relating to any Work Product.

*Id.* at 3.

49.     Church expressly acknowledged in the Confidentiality and Assignment of Proprietary Rights Agreement that

> the Company would suffer irreparable harm in the event of any violation or breach by the Employee of any of the terms and conditions of this Agreement, that the Company's remedies at law for such a violation or breach would be inadequate, and that, as a consequence, the Company shall be entitled to seek specific performance or an injunction to remedy any breach of this Agreement by the Employee.

*Id.* at 4.

50.     The Confidentiality and Assignment of Proprietary Rights Agreement provides that its terms and Church's obligations under the agreement survive the termination of Church's employment by the company. *Id.* at 3–4.

51.     The Confidentiality and Assignment of Proprietary Rights Agreement includes a provision awarding attorney's fees and costs to the prevailing party if the agreement is breached. The provision states that "[i]f either party breaches its respective obligations under this Agreement, and the other party is thereby required to incur attorneys' fees or other fees or costs, the party so incurring such fees shall be entitled to the payment of those fees and costs by the breaching party." *Id.* at 4.

52.     On September 8, 2021, Church agreed to abide by the terms of Plaintiff's Employee Handbook. Attached as **Exhibit F** and incorporated herein is Church's Receipt and Acknowledgement of Employee Handbook. In the Receipt and Acknowledgement of Employee Handbook, Church agreed to "comply with all policies in the Handbook and any amendments." Ex. F. Church's Employment Agreement with Plaintiff also incorporated the terms of certain policies, including, but not limited to, the APR Handbook Acknowledgement. Ex. A ¶ 14.

53.     The Employee Handbook, attached as **Exhibit G** and incorporated herein, contains provisions on employee obligations to maintain the confidentiality of Plaintiff's materials. In relevant part, it provides that employees

> will keep confidential and not divulge, use, furnish, or make accessible to any other party any of the Company's Proprietary Information, including, but not limited to, confidential information and business secrets, customer lists, client names, photographs, costs, prices, profits, markets, products, key personnel, policies, operational methods, plans for future developments, and other business affairs and methods, and other information not readily available to the public, except as required by law.

Ex. G at 26. The Employee Handbook expressly notes that "[y]ou understand that this provision of the Handbook survives the end of the employment relationship between you and the Company and shall be enforceable at all times in the future." *Id.*

54.     The Employee Handbook also obligated Church to abide by Plaintiff's policies on outside employment. In relevant part, the Employee Handbook provides that "[e]mployees may not take an outside job, either for pay or as a donation of her/his personal time, with a customer or competitor of the Company; nor may they do work on their own if it competes in any way with the sales of products or services we provide our customers." *Id.* at 33.

55.     The Employee Handbook also barred Church from creating either a conflict of interest or the appearance of a conflict of interest. Accepting outside employment or financial interests that would create such a conflict or its appearance was specifically prohibited. *Id.*

56.     Church also entered into a Non-Competition, Non-Solicitation and Non-Interference Agreement with Plaintiff, which is attached as **Exhibit H** and incorporated herein (the "Non-Compete Agreement"). Church and Plaintiff entered into the agreement on July 14, 2021, and its effective date was August 9, 2021, Church's official start date. Ex. H at 1.

57.     The Non-Compete Agreement contains two covenants on competition with Plaintiff. The first provision is entitled "During Employment" and provides that Church "shall not own, manage, operate, control, consult or work in any other capacity for any business in competition with APR's Business." *Id.*

58.     The second provision on competition with Plaintiff is entitled "After Employment" and provides that "[u]pon termination of this Agreement under this subsection, Employee shall not own, manage, operate, consult or work in any other capacity for any business in competition with APR's Business (as defined above) anywhere within the United States and Canada for a period of twelve (12) months from the effective date of termination of Employee's employment with APR." *Id.*

59.     The Non-Compete Agreement defines APR's Business as "[a]ny activities involving the design, construction, operation and maintenance of power plants." *Id.*

60.     The Non-Compete Agreement also contains provisions on the solicitation of Plaintiff's business, customers, or employees. The Non-Compete Agreement provides that Church

> agrees that while employed by APR and for a period of twelve (12) months following the termination of employment for any reason, [Church] will not, directly or indirectly, solicit or attempt to solicit any business in competition with the Business of APR from any customers of APR, with whom [Church] had material

contact at any time during [Church's] employment with APR, nor will [Church] directly or indirectly solicit any vendors of APR, with whom [Church] had any material contact during [Church's] employment with APR, to provide services to any business which competes with the Business of APR.

*Id.*

61.     The Non-Compete Agreement also provides that Church

further agrees that while employed by APR and for a period of twelve (12) months following the termination of employment for any reason, Employee will not, directly or indirectly, solicit or attempt to solicit any other employee of APR, or any of its subsidiary or affiliated companies (collectively, the "APR Companies"), for the purpose of encouraging, enticing or causing said employee to voluntarily terminate employment with any of the APR Companies.

*Id.* at 2.

**D.     Church Clandestinely Begins Conspiring with a Direct Competitor of Plaintiff All While Continuing to Serve as Plaintiff's Chief Executive Officer, and in Doing So, Willfully and Shamelessly Violates His Agreements with Plaintiff and His Duties of Loyalty, Good Faith, and Care to Plaintiff and its Members.**

62.     On or about November 6, 2023, Church accepted an offer of employment from the American Power Entities. This offer letter is attached as **Exhibit I** and incorporated herein.

63.     On or about November 9, 2023, Church agreed to, and executed, a formal contract of employment with the American Power Entities pursuant to which his official title would be Chief Operating Officer of APR Green Assets LLC (the "Conflicting Employment Contract"). The Conflicting Employment Contract is attached as **Exhibit J** and incorporated herein.

64.     Church's title as COO of APR Green Assets LLC is a mere formality. In reality, Church was hired by, is employed by, and continues to work on behalf of, all of the American Power Entities.

65.     Although the formal parties to the Conflicting Employment Contract were Defendant APR Green Assets LLC and Church, the terms of the agreement provide that Church's

employment and job responsibilities pertain to not only APR Green Assets LLC but all of the American Power Entities. Ex. J.

66.     The Conflicting Employment Contract defines "Company's Affiliates" as "the Company, its parent (American Power Resources, LLC), and each of their parents, present and future subsidiaries, financiers, affiliates, related parties, members, managers, beneficial owners, officers, directors, shareholders, and employees." *Id.* ¶ 1.4.

67.     The Conflicting Employment Contract defines the term "business" as

all business activities, services, and products, *including but not limited to all business activities of the Company's Affiliates (as defined herein)*, services, and products, including but not limited to, real estate, development, construction, finance, ownership, operation and maintenance of renewable energy systems and assets, and the expertise for creation of new and integration of existing data centers with the transition of their energy needs to renewable energy, *as well as Company's entering into agreements with American Power Resources, LLC, its parent, subsidiaries and affiliates* and/or third party companies and strategic joint venture agreements with American Power and/or third party companies.

*Id.* ¶ 1.1 (emphasis added).

68.     The Conflicting Employment Contract defines the term "services" as:

Employee shall perform the Services for the Company and report to the Employee's direct supervisor, assigned supervisors, President, and/or CEO of the Company, the *duties of which are set forth in the attached Schedule 1.6*, and shall render services exclusively on behalf of the Company in connection with the Company's *Business and related businesses*, and shall include other business initiatives entered into by the Company from time to time and at any time in the future, in accordance with the professional standards, safety standards, and practices established by the Company.

*Id.* ¶ 1.6 (emphasis added).

69.     The Conflicting Employment Contract's repeated use of "Company Affiliates" and "business," which itself incorporates the "Company Affiliates," as noted above, "services" and "related businesses" together establish that Church's employment and job responsibilities are with, and in service to, the American Power Entities.

20

70.    For example, Section 1.5 of the Conflicting Employment Agreement states that "Employee shall use Employee's best efforts to perform his Services and Employee shall devote Employee's entire and exclusive working time, energy, skill and best efforts to the performance of his duties hereunder in a manner which will faithfully and diligently further the *business* and interests of the Company." *Id.* ¶ 1.5 (emphasis added). Because "business" is defined as including the business activities of the Company's Affiliates, and "services" is defined as work on behalf of not only the Company's business, but also related businesses, the Conflicting Employment Agreement obligates Church to provide employment services to the American Power Entities.

71.    In addition, the Conflicting Employment Agreement repeatedly includes "Company Affiliates" as entities that are protected in the event of Church's default under the agreement, *Id.* ¶ 3.1, entitled to attorney's fees and costs and injunctive relief in the event of Church's breach of the agreement, *Id.* ¶ 3.1, entitled to protection under the non-disclosure, intellectual property, work product, and confidentiality provisions of the agreement, *Id.* ¶¶ 5.2–5.3, and entitled to indemnification from Church, *Id.* ¶ 5.5.

72.    The Conflicting Employment Agreement was also signed and executed by Defendant AJ Javan. Javan's profile on Linkedin and one of the American Power Entities' websites, apr.energy, represent Javan as the founder and CEO of "American Power Resources" and all entities under the "American Power Resources" umbrella, including the American Power Entities. The American Power Entities' website, apr.energy, furthermore represents American Power Realty LLC, APR Renewables LLC, APR Green Assets LLC, and APR Green Data LLC as "business units" of American Power Resources LLC and Javan as their founder and CEO.

73.    The website of the American Power Entities also characterizes the American Power Entities as a single corporate enterprise. The "About Us" page of the American Power Entities'

website, https://apr.energy/about-us/#who-we-are, describes the American Power Entities as having a single leadership team, and states that "American Power Resources' businesses use a multi-dimensional approach to provide comprehensive solutions for the customers, people, and communities we serve." It also characterizes "APR" as "Our Company":



74.     The American Power Entities are direct competitors of Plaintiff. Like Plaintiff, the American Power Entities provide electricity generation and utility services to clients and potential customers. The American Power Entities together represent themselves as "APR" and offer clients and potential customers the ability to purchase electricity generation services, including photovoltaic and battery assets. American Power Holdings, LLC and American Power Resources LLC do this, in part, by coordinating the offerings and services of what they describe as their "business units"—APR Renewables LLC, American Power Realty LLC, APR Green Assets LLC, and APR Green Data LLC. APR Renewables LLC develops and builds commercial and utility-scale photovoltaic and battery assets for clients and potential customers. American Power Realty LLC is engaged in leasing and owning real property in which photovoltaic, battery, and other green

assets are deployed or constructed. APR Green Assets LLC invests in, operates, manages, and owns renewable energy power plants. APR Green Data LLC offers to construct photovoltaic electricity-generation facilities at data centers. These entities—which their parent companies American Power Holdings, LLC and American Power Resources LLC themselves characterize as a single joint and integrated operation—offer services that directly compete with Plaintiff's business and services.

75.     In addition, further evidence of the competition between Plaintiff and the American Power Entities is that, since being hired at the American Power Entities, Church has used the proprietary potential client lists of Plaintiff that he obtained as Plaintiff's CEO to solicit potential customers for the American Power Entities. Church has attempted to convince those potential customers, with whom he also had material contact at Plaintiff, to not use Plaintiff to meet their electrification needs and to use the American Power Entities to meet those needs instead.

76.     Church has also publicly commented on Plaintiff's suite of electrification options in the past. For example, during his tenure at Plaintiff, Church offered a video message, which Plaintiff at the time promoted publicly, regarding the broad array of electrification options that Plaintiff offers. The video references solar and wind electrification. During the video, Church states that Plaintiff "has all the right parts and pieces . . . to do literally anything."

77.     Plaintiff terminated Church's employment on January 23, 2024, one day after Plaintiff learned that Church was working as the COO of the competing American Power Entities.

78.     Church's employment as Plaintiff's CEO overlapped with his employment at the American Power Entities from no later than early November 2023, when the American Power Entities formally hired Church, to January 23, 2024, the date that Plaintiff fired him.

E.   ***The American Power Entities Blatantly Violate and Infringe on Plaintiff's Trademark Rights and Intellectual Property.***

79.   The American Power Entities are blatantly violating Plaintiff's trademark rights under Federal and Florida law.

80.   Plaintiff has been using the mark "APR Energy" ("Plaintiff's Mark") since July 1, 2008. Enterprises in the United States and across the globe identify Plaintiff's Mark with Plaintiff, and Plaintiff's Mark constitutes an integral part of Plaintiff's brand, name identification, and recognizability. Plaintiff affixes "APR" and "APR Energy" to almost everything it produces, including, but not limited to, its electrification and battery equipment and solutions, product wrapping, signage, marketing, communications, and digital materials, including its webpage, aprenergy.com. APR is, and has always been, the dominant portion of Plaintiff's Mark and is recognized as such by customers and the public.

81.   Plaintiff began marketing and selling its goods and services throughout the United States and the world using Plaintiff's Mark at least as early as July 1, 2008.

82.   On February 19, 2004, Plaintiff registered its website aprenergy.com, through which Plaintiff's goods and services have been continuously promoted, offered, and sold in both interstate and international commerce to United States and global consumers under Plaintiff's Mark.

83.   As an integral part of Plaintiff's branding and marketing, Plaintiff created and has continuously promoted Plaintiff's goods and services in connection with Plaintiff's Mark through its social media accounts, such as its accounts on X, Facebook, and Linkedin.

84.   Plaintiff has accordingly expended substantial time, money, and effort to advertise and promote Plaintiff's goods and services under its Mark.

85.     Plaintiff's extensive and continuous use of Plaintiff's Mark in connection with Plaintiff's goods and services has indelibly impressed on the minds of the relevant consuming public that Plaintiff's Mark identifies Plaintiff as the source of Plaintiff's goods and services. Accordingly, Plaintiff has acquired valuable common law trademark rights in Plaintiff's Mark, which are protected under federal and Florida law.

86.     Plaintiff also has four U.S. registrations for the mark APR Energy. These registrations consist of Registration Nos. 3654109, 4145502, 4330688, and 4534470. These registrations are attached as **Exhibit K** and incorporated herein.

87.     Registration Nos. 4145502 and 4330688 are for the standard characters within the phrase APR Energy "without claim to any particular font style, size, or color." Ex. K. As the beginning element of Plaintiff's Mark and followed by the common word "energy," "APR" is the dominant and more distinctive portion of Plaintiff's Mark.

88.     Plaintiff's current logo reflects Plaintiff's mark:



89.     The American Power Entities blatantly infringe on Plaintiff's Mark and intellectual property without Plaintiff's authorization. Since at least early 2022, the American Power Entities have infringed on Plaintiff's Mark in the marketing, promotion, and sale of their own goods and services.

90.     The logo used by the parent entities, American Power Holdings, LLC and American Power Resources LLC, infringes upon Plaintiff's Mark. It prominently uses "APR" and brazenly copies the typeface and stylization of Plaintiff's current logo:



91.     The logo for APR Renewables LLC infringes upon Plaintiff's Mark. It uses "APR" and brazenly copies the typeface and stylization of Plaintiff's current logo:



92.     The logo for APR Green Assets infringes upon Plaintiff's mark. It uses "APR" and brazenly copies the typeface and stylization of Plaintiff's current logo:



93.     The logo for APR Green Data infringes upon Plaintiff's mark. It uses "APR" and brazenly copies the typeface and stylization of Plaintiff's current logo:



94.     The American Power Entities also repeatedly use Plaintiff's Mark in an infringing matter, and without Plaintiff's authorization, on their websites. For example, the apr.energy website describes the American Power Entities as "APR," declares "WE ARE APR," and thereafter lists American Power Realty LLC, APR Renewables LLC, APR Green Assets LLC, and APR Green Data LLC as "APR's Businesses":



95.     The American Power Entities' websites, apr.energy and aprenew.com, also infringe on Plaintiff's Mark. Incredibly, the domain name for the American Power Entities' main website is apr.energy. The domain name for Plaintiff is aprenergy.com. Apr.energy is a counterfeit of Plaintiff's Mark and is designed to confuse the public and potential and existing customers of the relationship between the American Power Entities and Plaintiff.

96.     As noted above, Plaintiff registered its domain name, aprenergy.com, on February 19, 2004.

97.     The American Power Entities and Javan registered apr.energy and aprenew.com on October 29, 2021.

98.     The American Power Entities and Javan registered apr.energy and aprenew.com using an agent, Domains by Proxy, LLC, which is a company based in Arizona that registers a domain on behalf of its true owner in order to assist the true owner in hiding its identity.

99.     Javan actively and knowingly caused the American Power Entities to infringe upon, and counterfeit, Plaintiff's Mark, as alleged above. He founded the American Power Entities, directed their use and registration of apr.energy and aprenew.com, and caused the American Power Entities to engage in all other acts of infringement alleged above. Javan was aware of Plaintiff's existence and its Mark before he caused the American Power Entities to infringe upon and counterfeit Plaintiff's Mark.

100.    At the time of his hire as an executive at the American Power Entities, Church had full knowledge of Plaintiff's Mark, use of its Mark, use of aprenergy.com, intellectual property rights, and long history of using its Mark. Despite this knowledge, Church, after he joined the American Power Entities, actively and knowingly caused the American Power Entities to continue infringing upon and counterfeiting Plaintiff's Mark and ratified their continued infringement upon and counterfeiting of Plaintiff's Mark.

101.    The American Power Entities' infringements and counterfeit of Plaintiff's Mark and intellectual property rights were intentional, willful, deliberate, and done in bad faith. Javan's decisions to cause those infringements and his and Church's decisions to continue them until the present were also intentional, willful, deliberate, and done in bad faith.

102.    The American Power Entities uses of Plaintiff's Mark are substantially identical in sight, sound, meaning, and commercial impression to Plaintiff's Mark. The American Power Entities were aware of Plaintiff's existence and its Mark before they began infringing upon and counterfeiting Plaintiff's Mark, as alleged above.

103.    The Plaintiff and the American Power Entities' respective goods and services, both of which are being offered under Plaintiff's Mark due to the American Power Entities' infringement, are marketed and sold in overlapping geographic regions to the same class of purchasers and through the same trade channels. Plaintiff and the American Power Entities compete in the market for electricity generation and utility services. Customers in the market for electricity generation and utility services have multiple options for securing a supply of electricity. Plaintiff offers customers mobile gas turbine fleets and photovoltaic and wind power solutions. Plaintiff is also planning to offer hydrogen power solutions. The American Power Entities offer customers photovoltaic power solutions, which compete directly, as discussed above, with Plaintiff's own suite of electrification options. Plaintiff and the American Power Entities also serve customers in overlapping geographic regions. Plaintiff serves customers both in the United States and internationally. The American Power Entities serve customers domestically.

104.    The American Power Entities, Javan, and Church are fully aware that they compete with APR Energy. Church helped to develop Plaintiff's strategic objective of developing its suite of electrification options to include photovoltaic, wind, and hydrogen options. Church and the American Power Entities have also approached potential customers of Plaintiff—who they became aware of due to Church's interactions at Plaintiff and wrongful divulgence of Plaintiff's proprietary and highly-confidential customer lists—and attempted to convince them to use the American Power Entities instead of Plaintiff to meet their electrification needs.

105.    As a result of the American Power Entities' marketing and sale of their goods and services in connection with Plaintiff's Mark, consumers are likely to be confused such that consumers will erroneously believe that the American Power Entities are affiliated, connected, or

associated with, or in some way related to, Plaintiff or Plaintiff's goods or services offered under Plaintiff's Mark.

106.    In fact, Plaintiff and its employees have been repeatedly approached by members of the public who are confused between Plaintiff and the American Power Entities and who wrongfully believe, because of the American Power Entities, Javan, and Church's wrongful conduct and deceit, that Plaintiff and the American Power Entities are one and the same.

## COUNT I:

## TRADEMARK INFRINGMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)

### Brought Against All Defendants

107.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

108.    Plaintiff has used Plaintiff's Mark, including the name "APR," in Florida and throughout the United States on or in connection with the advertising, promotion, and sale of Plaintiff's goods and services at least as early as July 1, 2008.

109.    Plaintiff has used Plaintiff's Mark, including the name "APR," continuously in the United States for a period of time prior to the present to market and sell Plaintiff's goods and services.

110.    The American Power Entities are using and infringing upon Plaintiff's Mark, including "APR," in commerce in connection with the advertising, promotion, and sale of their goods and services.

111.    The American Power Entities adopted and began using Plaintiff's Mark, including "APR," after Plaintiff's first use of its Mark in the United States.

112.     Plaintiff's rights in Plaintiff's Mark are therefore senior to the American Power Entities' rights—if any—in the Mark, when used in connection with power generation, utility products and services, or any other related goods and services.

113.     In addition, Plaintiff's four U.S. Registrations of Plaintiff's Mark constitute, as a matter of federal law, "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein . . . ." 15 U.S.C. § 1115(a); *see also* Ex. K (Plaintiff's registrations with the U.S. Patent and Trademark Office).

114.     The goods and services specified in each of the U.S. Registrations include the goods and services over which the American Power Entities and Plaintiff compete. Goods and services specified in the registrations include but are not limited to: "Installation and maintenance of power generation equipment" and "Utility services, namely, transmission of electricity and electric power; fast-track capacity power and electricity services, namely, providing standby electricity and electric power." *Id.*

115.     The   American   Power   Entities'   use   of   Plaintiff's   Mark for goods and services that are identical, nearly identical, directly competing, overlapping, and/or closely related to Plaintiff's goods and services is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the American Power Entities with Plaintiff, or as to the origin, sponsorship, or approval of the American Power Entities' goods, services, or commercial activities.

116.     Defendant Javan is personally responsible and liable for the American Power Entities' acts of infringement upon Plaintiff's Mark. Javan founded the American Power Entities

31

and is their Chief Executive Officer. Javan was responsible, in whole or in part, for their strategy of using Plaintiff's Mark and attempting to sow confusion among customers and potential customers regarding the relationship and associations between Plaintiff and the American Power Entities and the goods and services they provide.

117.    Church is personally responsible and liable for the American Power Entities' acts of infringement upon Plaintiff's Mark. Church actively and knowingly facilitated and is responsible for the American Power Entities' infringement and uses of Plaintiff's registered Mark after he joined and became an executive at the American Power Entities.

118.    In undertaking the conduct complained of in this action, the American Power Entities, Javan, and Church willfully, knowingly, and intentionally violated Plaintiff's rights in Plaintiff's Mark, despite being on notice of Plaintiff's prior rights.

119.    The American Power Entities, Javan, and Church's acts of infringement are therefore likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association, or as to the origin, sponsorship, or approval of the goods or services of the American Power Entities with those of Plaintiff. In addition, the American Power Entities, Javan, and Church's acts of infringement have been committed with the intent to cause such confusion, mistake, and to deceive, and were otherwise deliberate and/or in bad faith. Such intentional and willful conduct makes this an exceptional case.

120.    Plaintiff is entitled to injunctive relief in accordance with 15 U.S.C. § 1116(a).

121.    Plaintiff is entitled to recover profits and damages as set forth in 15 U.S.C. § 1117(a).

122.    Plaintiff is entitled to recover its attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a).

WHEREFORE, Plaintiff requests judgment in its favor and against Defendants for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, attorney's fees and costs, and any further relief that this Court deems just and proper.

## COUNT II:

## TRADEMARK INFRINGMENT AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1114(a)

### Brought Against All Defendants

123.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

124.    Plaintiff has repeatedly registered "APR Energy" with the United States Patent and Trademark Office and "APR Energy" constitutes Plaintiff's registered mark. *See* Ex. K (Plaintiff's registrations with the U.S. Patent and Trademark Office).

125.    Plaintiff's four U.S. Registrations of Plaintiff's Mark constitute, as a matter of federal law, "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein . . . ." 15 U.S.C. § 1115(a); *see also* Ex. K.

126.    The goods and services specified in each of the U.S. registration include the goods and services over which the American Power Entities and Plaintiff compete. Goods and services specified in the registrations include but are not limited to: "Installation and maintenance of power generation equipment" and "Utility services, namely, transmission of electricity and electric power; fast-track capacity power and electricity services, namely, providing standby electricity and electric power." *Id*.

127.    The American Power Entities have used in commerce, without Plaintiff's consent, a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered Mark in connection with the sale, distribution, or advertising of the American Power Entities' goods and services. This use by the American Power Entities is likely to cause confusion, or to cause mistake, or to deceive.

128.    The American Power Entities have also, without Plaintiff's consent, reproduced, counterfeited, copied, or colorably imitated the Plaintiff's registered Mark to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of the American Power Entities' goods or services. The American Power Entities' uses are likely to cause confusion, or to cause mistake, or to deceive.

129.    The American Power Entities have also used a counterfeit mark under 15 U.S.C. § 1116(d)(1)(B). The American Power Entities' domain name of apr.energy constitutes a counterfeit of Plaintiff's Mark, which is registered on the principal register in the United States Patent and Trademark Office for installation and maintenance of power generation equipment and utility services sold, offered for sale, or distributed and which are in use. Apr.energy is identical, or substantially indistinguishable from, APR Energy. The American Power Entities have used and continue to use apr.energy to sell, offer for sale, promote, and market the installation and maintenance of power generation equipment and utility services. They intentionally used and continue to use the counterfeit mark knowing that it is counterfeit, and their use of the counterfeit mark was and is willful.

130.    Javan is personally responsible and liable for the American Power Entities' acts of infringement upon Plaintiff's Mark and counterfeit of Plaintiff's Mark. Javan founded the

American Power Entities and is their Chief Executive Officer. Javan was responsible, in whole or in part, for their strategy of using Plaintiff's Mark, counterfeiting Plaintiff's Mark, and attempting to sow confusion among customers and potential customers regarding the relationship and associations between Plaintiff and the American Power Entities and the goods and services they provide.

131.    Church is personally responsible and liable for the American Power Entities' acts of infringement upon Plaintiff's Mark and counterfeit of Plaintiff's Mark. Church actively and knowingly facilitated and is responsible for the American Power Entities' infringement, counterfeit, and uses of Plaintiff's registered Mark after he joined and became an executive at the American Power Entities.

132.    The American Power Entities, Javan, and Church's acts of infringement, counterfeit, and uses of Plaintiff's registered Mark are likely to cause confusion, or to cause mistake, or to deceive and have been committed with knowledge that their acts, counterfeits, and uses were intended to cause confusion, mistake, and to deceive, and were otherwise deliberate, willful, intentional, and/or in bad faith. Such intentional and willful conduct makes this an exceptional case.

133.    Plaintiff is entitled to injunctive relief in accordance with 15 U.S.C. § 1116(a).

134.    Plaintiff is entitled to recover profits and damages as set forth in 15 U.S.C. § 1117(a).

135.    Plaintiff is entitled to recover its attorneys' fees pursuant to 15 U.S.C. § 1117(a).

136.    As set forth in 15 U.S.C. § 1117(b)(1), Plaintiff is entitled to recover three times the profits and damages set forth in 15 U.S.C. § 1117(a) for the American Power Entities, Javan, and  Church's use of a counterfeit mark.

137.    In addition, pursuant to 15 U.S.C. § 1117(c), Plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover statutory damages established in 15 U.S.C. § 1117(c) in lieu of damages set forth in 15 U.S.C. § 1117(a), for the American Power Entities, Javan, and Church's use of a counterfeit mark.

WHEREFORE, Plaintiff requests judgment in its favor and against Defendants for profits and damages, including treble or statutory damages for acts of counterfeit, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, attorney's fees and costs, and any further relief that this Court deems just and proper.

## COUNT III:

## TRADEMARK INFRINGMENT AND UNFAIR COMPETITION UNDER FLORIDA COMMON LAW

### Brought Against All Defendants

138.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

139.    Plaintiff owns common law trademark rights in Plaintiff's Mark and has priority rights in and to Plaintiff's Mark that date back to at least as early as July 1, 2008.

140.    Plaintiff has used Plaintiff's Mark continuously and consistently for an extended period of time to identify, advertise, promote, and sell Plaintiff's goods and services, which has indelibly impressed on the minds of the consuming public the impression that Plaintiff's Mark identifies Plaintiff as the source of its power generation goods and services.

141.    The American Power Entities adopted and began using Plaintiff's Mark, as described above, after Plaintiff first began using Plaintiff's Mark.

142.    The American Power Entities' acts have created and, unless restrained by this Court, will continue to create a likelihood of confusion and deception of the consuming public, causing irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law.

143.    Javan is personally responsible and liable for the American Power Entities' acts of infringement upon Plaintiff's Mark. Javan founded the American Power Entities and is their Chief Executive Officer. Javan was responsible, in whole or in part, for their strategy of using Plaintiff's Mark and attempting to sow confusion among customers and potential customers regarding the relationship and associations between Plaintiff and the American Power Entities and the goods and services they provide.

144.    Church is personally responsible and liable for the American Power Entities' acts of infringement upon Plaintiff's Mark. Church actively and knowingly facilitated and is responsible for the American Power Entities' infringement and uses of Plaintiff's Mark after he joined and became an executive at the American Power Entities.

145.    The American Power Entities, Javan, and Church's conduct constitutes unfair competition under the common law of Florida by a deliberate course of conduct, all without authorization, license, privilege, or justification.

146.    The American Power Entities, Javan, and Church have acted with full knowledge of Plaintiff's rights in and use of Plaintiff's Mark, and without regard to the likelihood of confusion and deception of the public created by their activities.

147.    The American Power Entities, Javan, and Church's conduct demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff and to deceive customers and the public, to the substantial and irreparable injury of Plaintiff.

148.    As a result of the American Power Entities, Javan, and Church's acts, Plaintiff has been damaged and will continue to be damaged in an amount not as yet determined or ascertainable. At a minimum, however, Plaintiff is entitled to injunctive relief, an accounting of the American Power Entities' profits, actual damages, punitive damages, attorney's fees and costs, and any and all other relief authorized by law.

WHEREFORE, Plaintiff requests judgment in its favor and against Defendants for actual and punitive damages, an accounting of the American Power Entities' profits, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, attorney's fees and costs, and any further relief that this Court deems just and proper.

## COUNT IV:

## VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT

### Brought Against All Defendants

149.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

150.    Plaintiff has trade secrets, as defined in Florida Statutes Section 688.002(4), including, but not limited to, pricing models, costing models, long-term joint venture and merger and acquisition strategies, long-term joint venture and merger and acquisition plans and targets, lists of potential and current customers, term sheets, counterparty lists and names, and asset configurations.

151.    Plaintiff has taken reasonable measures to keep secret the information constituting its trade secrets.

152.    The information constituting Plaintiff's trade secrets derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

through proper means by, others who could obtain economic value from the disclosure or use of that information.

153.    Church has disclosed or used Plaintiff's trade secrets without Plaintiff's authorization and for his own benefit. By doing so, Church has misappropriated Plaintiff's trade secrets. Church was and is fully aware that his misappropriation was by improper means, including, but not limited to, misappropriating, and wrongfully disclosing the trade secrets in breach of his contractual agreements to maintain their secrecy and in violation of his fiduciary duties to Plaintiff and its members. At the times of his disclosure and use of the trade secrets without Plaintiff's express or implied consent, Church knew, or had reason to know, that he had acquired the trade secrets under circumstances that gave him a duty to maintain their secrecy and limit their use and availability.

154.    Javan and the American Power Entities acquired Plaintiff's trade secrets while knowing, or having reason to know, that their acquisition of Plaintiff's trade secrets resulted from Church's breach of his contractual obligations to maintain the secrecy of those trade secrets and their inducement of Church's breaches of his contractual obligations to maintain the secrecy of those trade secrets. Javan and the American Power Entities have also used Plaintiff's trade secrets without Plaintiff's express or implied consent after having used improper means to acquire knowledge of the trade secrets, having had knowledge, or reason to know, at the time of their use of the trade secrets, that they acquired knowledge of the trade secrets from or through a person who owed a duty to Plaintiff to maintain the secrecy of the trade secrets or to limit their use.

155.    Church, Javan, and the American Power Entities' misappropriations were intentional, willful, and malicious.

156. Church, Javan, and the American Power Entities' misappropriations have already caused Plaintiff damages and irreparable injuries and will continue to do so.

157. Plaintiff lacks an adequate remedy at law. Plaintiff has suffered irreparable harm and will continue to suffer irreparable harm unless Church, Javan, and the American Power Entities are enjoined from misappropriating Plaintiff's trade secrets and Church is enjoined from entering into or continuing an employment relationship with the American Power Entities and/or Javan.

WHEREFORE, Plaintiff requests judgment in its favor and against Defendants for damages, including, pursuant to Fla. Stat. § 688.004(2), an award of two times the damages established in Fla. Stat. § 688.004(1) given Defendants' willful and malicious misappropriation, temporary and permanent injunctive relief, attorney's fees and costs as established in Fla. Stat. § 688.005 given Defendants' willful and malicious misappropriation, and any further relief that this Court deems just and proper.

## COUNT V:

## VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836

### Brought Against All Defendants

158. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

159. Plaintiff has trade secrets, as defined in 18 U.S.C. § 1836(3), including, but not limited to, pricing models, costing models, long-term joint venture and merger and acquisition strategies, long-term joint venture and merger and acquisition plans and targets, lists of potential and current customers, term sheets, counterparty lists and names, and asset configurations, and constitutes the owner of those trade secrets pursuant to 18 U.S.C. § 1839(4).

160.     Plaintiff's trade secrets are related to Plaintiff's products and services, which are used in, or intended for use in, interstate and foreign commerce.

161.     Plaintiff has taken reasonable measures to keep secret the information constituting its trade secrets.

162.     The information constituting Plaintiff's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, others who could obtain economic value from the disclosure or use of that information.

163.     Church has disclosed or used Plaintiff's trade secrets without Plaintiff's authorization and for his own benefit. By doing so, Church has misappropriated Plaintiff's trade secrets. Church was and is fully aware that his misappropriation was by improper means, including, but not limited to, misappropriating, and wrongfully disclosing the trade secrets in breach of his contractual agreements to maintain their secrecy and in violation of his fiduciary duties to Plaintiff and its members. At the times of his disclosure and use of the trade secrets without Plaintiff's express or implied consent, Church knew, or had reason to know, that he had acquired the trade secrets under circumstances that gave him a duty to maintain their secrecy and limit their use and availability.

164.     Javan and the American Power Entities acquired Plaintiff's trade secrets while knowing, or having reason to know, that their acquisition of Plaintiff's trade secrets resulted from Church's breach of his contractual obligations to maintain the secrecy of those trade secrets and their inducement of Church's breaches of his contractual obligations to maintain the secrecy of those trade secrets. Javan and the American Power Entities have also used Plaintiff's trade secrets without Plaintiff's express or implied consent after having used improper means to acquire

knowledge of the trade secrets and having had knowledge, or reason to know, at the time of their use of the trade secrets, that they acquired knowledge of the trade secrets from or through a person who owed a duty to Plaintiff to maintain the secrecy of the trade secrets or to limit their use.

165.    Church, Javan, and the American Power Entities' misappropriations were intentional, willful, and malicious.

166.    Church, Javan, and the American Power Entities' misappropriations have already caused Plaintiff damages and irreparable injuries and will continue to do so.

167.    Plaintiff lacks an adequate remedy at law. Plaintiff has suffered irreparable harm and will continue to suffer irreparable harm unless Church, Javan, and the American Power Entities are enjoined from misappropriating Plaintiff's trade secrets and Church is enjoined from entering into or continuing an employment relationship with the American Power Entities and/or Javan.

WHEREFORE, Plaintiff requests judgment in its favor and against Defendants for damages, including, given the willful and malicious misappropriations in question, an award of two times the damages as established in 18 U.S.C. § 1836(b)(3)(C), temporary and permanent injunctive relief, attorney's fees and costs given the willful and malicious misappropriations in question as established in 18 U.S.C. § 1836(b)(3)(D), and any further relief that this Court deems just and proper.

## COUNT VI:

## BREACH OF CONTRACT – EMPLOYMENT AGREEMENT

### Brought Against Defendant Church

168.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

169.    Plaintiff and Church executed an Employment Agreement on July 16, 2021. *See* Ex. A.

170.    The Employment Agreement constituted a valid contract between Plaintiff and Church. Church agreed to the covenants contained within in exchange for Plaintiff's hiring of him as its Chief Executive Officer and the extremely generous benefits and pay package included within the Employment Agreement. *See id.*

171.    The Employment Agreement included covenants of confidentiality and non-disclosure. Church acknowledged that he would receive access to "confidential and proprietary information" of Plaintiff, including, but not limited to, "information received from third parties under confidential conditions, business plans, customer lists, customer files, products and services offered or in development, strategic direction, marketing strategies and plans, software, designs, procedures, formulas, processes, financial data and results of operations; and . . . other know-how, ideas, concepts, trade secrets, and methodologies . . . ." *Id.* ¶ 10. Church agreed not to disclose, and to maintain the confidentiality of, this information. Id.

172.    Church breached the Employment Agreement by failing to maintain this confidential and proprietary information. Church has taken this confidential and proprietary information with him to the American Power Entities, competitors of Plaintiff, and shared Plaintiff's confidential and proprietary information, including, but not limited to, its trade secrets, with the American Power Entities.

173.    Plaintiff has been damaged and continues to be damaged by Church's breach. Church's failure to maintain its confidential and propriety information and his sharing of that information with a competitor has damaged Plaintiff's ability to compete, including against the American Resource Entities, unfairly and wrongfully provided the American Resource Entities

with unearned competitive advantages, and damaged Plaintiff's position in the electricity generation market.

174.    Church's violation of his Employment Agreement caused and continues to cause Plaintiff irreparable injury.

175.    In the Employment Agreement, Church agreed that:

[T]he restrictions contained in Sections 8 through 11 hereof, in view of the competitive nature of the business in which the Company Group is engaged, are reasonable and necessary in order to protect the legitimate interests of the Company Group, and *that any violation would result in irreparable injury to the Company Group*. You therefore acknowledge and agree that, in the event of a breach or threatened breach by you of any of Sections 8 through 11 hereof, the Company and other members of the Company Group *shall be entitled to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief (without proving actual damages or posting a bond or other security), as well as damages and an equitable accounting of all earnings, profits and other benefits arising from such violation*, which rights shall be cumulative and in addition to any other rights or remedies to which the Company may be entitled.

*Id.* ¶ 13.

176.    Plaintiff lacks an adequate remedy at law. Plaintiff has suffered irreparable harm and will continue to suffer irreparable injuries unless Church is enjoined from continuing to violate the terms of his Employment Agreement.

177.    Plaintiff is entitled to an award of its attorney's fees, expenses, and costs in this litigation against Church pursuant to the Employment Agreement. *See id.*

WHEREFORE, Plaintiff requests judgment in its favor and against Church for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, attorney's fees and costs, and any further relief that this Court deems just and proper.

<u>**COUNT VII:**</u>

<u>**TORTIOUS INTERFERENCE WITH CONTRACT – EMPLOYMENT AGREEMENT**</u>

**Brought Against the American Power Entities**

178.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

179.    The Employment Agreement constitutes a contractual relationship between Church and Plaintiff. *See* Ex. A.

180.    The American Power Entities have knowledge of that contractual relationship and intentionally, knowingly, and without justification interfered with it by inducing, facilitating, or otherwise continuing to facilitate Church's violations of the Employment Agreement.

181.    Plaintiff has suffered damages and will continue to suffer damages as a direct result of the American Power Entities' interference with Church and Plaintiff's Employment Agreement.

182.    Plaintiff has no adequate remedy at law. Plaintiff has suffered irreparable harm and will continue to suffer irreparable injuries unless the American Power Entities are enjoined from employing or contracting with Church in violation of the terms of Church's Employment Agreement.

WHEREFORE, Plaintiff requests judgment in its favor and against the American Power Entities for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, costs, and any further relief that this Court deems just and proper.

**COUNT VIII:**

**BREACH OF CONTRACT – CODE OF BUSINESS CONDUCT AND ETHICS POLICY**

**Brought Against Defendant Church**

183.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

184.   The Code of Business Conduct and Ethics Policy, Ex. C, constituted a valid contract between Plaintiff and Church. In the Ethics Acknowledgment, Ex. B, Church agreed that he understood "his obligations" under the Code of Business Conduct and Ethics Policy and promised to "undertake, as a condition to [his] present and continued employment at, appointment to the Board, or other affiliation with Atlas, to comply with the principles, policies and laws outlined in the Code of Business Conduct and Ethics Policy." Accordingly, Church obtained his employment on the condition that he agree to the Code of Business Conduct and Ethics Policy.

185.   Church breached the conflict of interest terms of the Code of Business Conduct and Ethics Policy by (1) agreeing to employment with the American Power Entities, which constitute a "business that competes, directly or indirectly, with Atlas," Plaintiff's ultimate parent company; (2) "[h]aving a direct or indirect personal financial relationship with a competitor, customer, or supplier," (*i.e.*, the American Power Entities); and (3) "[e]ngaging in any other employment or extensive personal projects during work hours, or using Atlas property in other employment" by working for the American Power Companies during his tenure as Plaintiff's Chief Executive Officer and using the confidential and proprietary information and trade secrets that he obtained as Plaintiff's CEO for the benefit of the American Power Companies in his capacity as their employee. Ex. C.

186.    Church breached the confidentiality terms of the Code of Business Conduct and Ethics Policy by sharing and disclosing confidential information about Atlas Corp. (*i.e.*, confidential and proprietary information and trade secrets of its subsidiary, Plaintiff) to the American Power Entities, an "external third-party." *Id.*

187.    Plaintiff has been damaged by Church's breach. Church's failure to maintain its confidential and propriety information and his sharing of that information with a competitor has damaged Plaintiff's ability to compete, including against the American Power Entities, unfairly and wrongfully provided the American Power Entities with unearned competitive advantages, and damaged Plaintiff's position in the electricity generation market. Plaintiff's ability to compete and position in the electricity generation market has also been damaged by Plaintiff's extraordinary disloyalty and breach of the conflict of interest provisions.

WHEREFORE, Plaintiff requests judgment in its favor and against Church for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, attorney's fees and costs, and any further relief that this Court deems just and proper.

## COUNT IX:

## TORTIOUS INTERFERENCE WITH CONTRACT – CODE OF BUSINESS CONDUCT AND ETHICS POLICY

### Brought Against the American Power Entities

188.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

189.    The Code of Business Conduct and Ethics Policy constitutes a contractual relationship between Church and Plaintiff. *See* Ex. C.

190.    The American Power Entities have knowledge of that contractual relationship and intentionally, knowingly, and without justification interfered with it by inducing, facilitating or

otherwise continuing to facilitate Church's violations of the Code of Business Conduct and Ethics Policy.

191.    Plaintiff has suffered damages as a direct result of the American Power Entities' interference with Church and Plaintiff's contractual relationship.

192.    Plaintiff will continue to suffer damages as well from the American Power Entities' interference given that the American Power Entities' interference resulted in their current access to, and possession of, the same information that Church was obligated to hold confidential pursuant to the Code of Business Conduct and Ethics Policy.

193.    Plaintiff has no adequate remedy at law. Plaintiff has suffered irreparable harm and will continue to suffer irreparable injuries unless the American Power Entities are enjoined from employing or contracting with Church in violation of the terms of the Code of Business Conduct and Ethics Policy.

WHEREFORE, Plaintiff requests judgment in its favor and against the American Power Entities for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, costs, and any further relief that this Court deems just and proper.

## COUNT X:

## BREACH OF CONTRACT – CONFLICT OF INTEREST POLICY

### Brought Against Defendant Church

194.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

195.    The Conflict of Interest Policy, Ex. D, constituted a valid contract between Plaintiff and Church. Church's employment with Plaintiff was conditioned on his assent to the Conflict of Interest Policy. Church agreed to the covenants contained within the Conflict of Interest Policy.

196.     The Conflict of Interest Policy states that a "conflict of interest exists when a personal interest interferes or appears to interfere with business practices of the ability to make objective business decisions." *Id.* Among conflicts of interest listed are "Competing with APR Energy" and "Financial interests in certain businesses." *Id.* In agreeing to the Conflict of Interest Policy, Church agreed to "report any known or perceived conflicts of interest to [his] Manager or Human Resources, as well as the Legal and Compliance Department." *Id.*

197.     Church breached the Conflict of Interest Policy by clandestinely signing on as an executive at a direct competitor during his tenure as Plaintiff's CEO. In doing so, Church competed with Plaintiff and gained a financial interest in the American Power Entities, whose interests are and were adverse to those of Plaintiff. In addition, at no point during his tenure at Plaintiff, including the period of time during which he served both Plaintiff and the American Power Entities, did Church ever report his conflicts of interests to his Manager, Human Resources, or Plaintiff's Legal and Compliance Department.

198.     Plaintiff has been damaged by Church's breach. Church's extraordinary disloyalty and breach of the conflict of interest provisions has damaged Plaintiff's ability to compete, including against the American Power Entities, unfairly and wrongfully provided the American Power Entities with unearned competitive advantages, and damaged Plaintiff's position in the electricity generation market.

WHEREFORE, Plaintiff requests judgment in its favor and against Church for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, attorney's fees and costs, and any further relief that this Court deems just and proper.

## COUNT XI:

## TORTIOUS INTERFERENCE WITH CONTRACT – CONFLICT OF INTEREST POLICY

**Brought Against the American Power Entities**

199.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

200.    The Conflict of Interest Policy constitutes a contractual relationship between Church and Plaintiff. *See* Ex. D.

201.    The American Power Entities have knowledge of that contractual relationship and intentionally, knowingly, and without justification interfered with it by inducing and facilitating Church's violations of the Conflict of Interest Policy.

202.    Plaintiff has suffered damages as a direct result of the American Power Entities' interference with Church and Plaintiff's contractual relationship. The American Power Entities interference has damaged Plaintiff's ability to compete, including against the American Power Entities, unfairly and wrongfully provided the American Power Entities with unearned competitive advantages, and damaged Plaintiff's position in the electricity generation market.

WHEREFORE, Plaintiff requests judgment in its favor and against the American Power Entities for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, costs, and any further relief that this Court deems just and proper.

## COUNT XII:

## BREACH OF CONTRACT – CONFIDENTIALITY AND ASSIGNMENT OF PROPRIETARY RIGHTS AGREEMENT

### Brought Against Defendant Church

203.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

204.    The Confidentiality and Assignment of Proprietary Rights Agreement, Ex. E, constituted a valid contract between Plaintiff and Church. Church's employment with Plaintiff was conditioned on his assent to the Confidentiality and Assignment of Proprietary Rights Agreement. *Id.* Church agreed to the covenants contained within the Confidentiality and Assignment of Proprietary Rights Agreement. Ex. D.

205.    Church breached the Confidentiality and Assignment of Proprietary Rights Agreement by failing to keep all Confidential Information, as defined in the agreement, confidential.

206.    Church breached the Confidentiality and Assignment of Proprietary Rights Agreement by failing to return Plaintiff's work product, as it is defined in the agreement, to Plaintiff upon his termination from Plaintiff.

207.    Plaintiff has been damaged by Church's breach. Church's breach of the Confidentiality and Assignment of Proprietary Rights Agreement has damaged Plaintiff's ability to compete, including against the American Power Entities, unfairly and wrongfully provided the American Power Entities with unearned competitive advantages, and damaged Plaintiff's position in the electricity generation market.

WHEREFORE, Plaintiff requests judgment in its favor and against Church for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, attorney's fees and costs, and any further relief that this Court deems just and proper.

## COUNT XIII:

## TORTIOUS INTERFERENCE WITH CONTRACT – CONFIDENTIALITY AND ASSIGNMENT OF PROPRIETARY RIGHTS AGREEMENT

### Brought Against the American Power Entities

208.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

209.    The Confidentiality and Assignment of Proprietary Rights Agreement constitutes a contractual relationship between Church and Plaintiff. *See* Ex. E.

210.    The American Power Entities have knowledge of that contractual relationship and intentionally, knowingly, and without justification interfered with it by inducing and facilitating Church's violations of the Confidentiality and Assignment of Proprietary Rights Agreement.

211.    Plaintiff has suffered damages as a direct result of the American Power Entities' interference with Church and Plaintiff's contractual relationship. The American Power Entities interference has damaged Plaintiff's ability to compete, including against the American Power Entities, unfairly and wrongfully provided the American Power Entities with unearned competitive advantages, and damaged Plaintiff's position in the electricity generation market.

212.    Plaintiff will continue to suffer damages as well from the American Power Entities' interference given that the American Power Entities' interference resulted in their current access to, and possession of, the same information that Church was obligated to hold confidential pursuant to the Confidentiality and Assignment of Proprietary Rights Agreement.

213.    Plaintiff has no adequate remedy at law. Plaintiff has suffered irreparable harm and will continue to suffer irreparable injuries unless the American Power Entities are enjoined from employing or contracting with Church.

WHEREFORE, Plaintiff requests judgment in its favor and against the American Power Entities for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, costs, and any further relief that this Court deems just and proper.

## COUNT XIV:

## BREACH OF CONTRACT – EMPLOYEE HANDBOOK

### Brought Against Defendant Church

214.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

215.    The Employee Handbook, Ex. G, constituted a valid contract between Plaintiff and Church. Church's Employment Agreement with Plaintiff was conditioned on his assent to the terms of the Employee Handbook. Church agreed to the covenants contained within the Handbook. Ex. F.

216.    Church breached the Employee Handbook by failing to abide by its terms on confidentiality, outside employment, and the creation of either a conflict of interest or the appearance of a conflict of interest.

217.    Plaintiff has been damaged by Church's breach. Church's breach of the Employee Handbook has damaged Plaintiff's ability to compete, including against the American Power Entities, unfairly and wrongfully provided the American Power Entities with unearned competitive advantages, and damaged Plaintiff's position in the electricity generation market.

WHEREFORE, Plaintiff requests judgment in its favor and against Church for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, attorney's fees and costs, and any further relief that this Court deems just and proper.

## COUNT XV:

## TORTIOUS INTERFERENCE WITH CONTRACT – EMPLOYEE HANDBOOK

### Brought Against the American Power Entities

218.     Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

219.     The Employee Handbook constitutes a contractual relationship between Church and Plaintiff. *See* Ex. G.

220.     The American Power Entities have knowledge of that contractual relationship and intentionally, knowingly, and without justification interfered with it by inducing and facilitating Church's violations of the Employee Handbook.

221.     Plaintiff has suffered damages as a direct result of the American Power Entities' interference with Church and Plaintiff's contractual relationship. The American Power Entities' interference has damaged Plaintiff's ability to compete, including against the American Power Entities, unfairly and wrongfully provided the American Power Entities with unearned competitive advantages, and damaged Plaintiff's position in the electricity generation market.

222.     Plaintiff will continue to suffer damages as well from the American Power Entities' interference given that the American Power Entities' interference resulted in their employment of Church and current access to, and possession of, the same information that Church was obligated to hold confidential pursuant to the Employee Handbook.

223.    Plaintiff has no adequate remedy at law. Plaintiff has suffered irreparable harm and will continue to suffer irreparable injuries unless the American Power Entities are enjoined from employing or contracting with Church.

WHEREFORE, Plaintiff requests judgment in its favor and against the American Power Entities for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, costs, and any further relief that this Court deems just and proper.

## COUNT XVI:

## BREACH OF CONTRACT – NON-COMPETITION, NON-SOLICITATION, AND NON-INTERFERENCE AGREEMENT

### Brought Against Defendant Church

224.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

225.    Plaintiff and Church entered into a Non-Competition, Non-Solicitation, and Non-Interference Agreement on July 14, 2021. *See* Ex. H.

226.    Church breached the Non-Competition, Non-Solicitation, and Non-Interference Agreement's provision governing competition with Plaintiff during his employment term. That is because Church did, in fact, "own, manage, operate, control, consult or work in any other capacity for any business in competition with APR's Business" during the term of his employment with Plaintiff. *Id.*

227.    Church breached—and, as of the filing of this Complaint with the Court, is continuing to breach—the Non-Competition, Non-Solicitation, and Non-Interference Agreement's provision governing competition with Plaintiff after his employment term. The post-employment competition term provides that "[u]pon termination of this Agreement under this subsection, Employee shall not own, manage, operate, consult or work in any other capacity for any business

55

in competition with APR's Business . . . anywhere within the United States and Canada for a period of twelve (12) months from the effective date of termination of Employee's employment with APR." *Id.* at 1. Church has violated this provision by managing, operating, consulting, and working for the American Power Entities, which compete with Plaintiff's business in the United States, and for having done so within twelve (12) months from the effective date of the termination of his employment with Plaintiff.

228.    The Non-Competition, Non-Solicitation, and Non-Interference Agreement defines the term "APR's Business" as "Any activities involving the design, construction, operation, and maintenance of power plants." *Id.*

229.    The American Power Entities are involved in the design, construction, operation, and maintenance of power plants and market themselves as being involved in this on their websites, apr.energy and aprenew.com.

230.    As an employee of the American Power Entities, Church has been engaged in "activities involving the design, construction, operation, and maintenance of power plants." *Id.*

231.    Church breached—and, as of the filing of this Complaint with the Court, is continuing to breach—the Non-Competition, Non-Solicitation, and Non-Interference Agreement's provision governing the solicitation of Plaintiff's business, customers, or employees. *Id.* Church has already reached out to customers with whom he had material contact during his tenure at Plaintiff and attempted to convince them to cease using Plaintiff to meet their electricity generation needs and to use the American Power Entities instead.

232.    Plaintiff has been, and will continue to be, damaged by Church's violations of his Non-Competition, Non-Solicitation, and Non-Interference Agreement with Plaintiff. Church has made, and is continuing to make, efforts to solicit Plaintiff's customers and clients using the

customer lists and other confidential and propriety information, including trade secrets, that he obtained while serving as Plaintiff's Chief Executive Officer. Church has wrongfully damaged, and is continuing to damage, Plaintiff's ability to compete in the electricity generation market.

233.    Church's breaches of his Non-Competition, Non-Solicitation, and Non-Interference Agreement have caused Plaintiff irreparable harm and are continuing to cause Plaintiff irreparable harm. Plaintiff has no adequate remedy at law and will continue to suffer irreparable injuries unless Church is enjoined from continuing to violate the terms of his Non-Competition, Non-Solicitation, and Non-Interference Agreement.

WHEREFORE, Plaintiff requests judgment in its favor and against Church for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, attorney's fees and costs, and any further relief that this Court deems just and proper.

## COUNT XVII:

## TORTIOUS INTERFERENCE WITH CONTRACT – NON-COMPETITION, NON-SOLICITATION, AND NON-INTERFERENCE AGREEMENT

### Brought Against the American Power Entities

234.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

235.    The Non-Competition, Non-Solicitation, and Non-Interference Agreement constitutes a contractual relationship between Church and Plaintiff. *See* Ex. H.

236.    The American Power Entities have knowledge of that contractual relationship and intentionally, knowingly, and without justification interfered with it by inducing and facilitating Church's violations of the Non-Competition, Non-Solicitation, and Non-Interference Agreement.

237.    Plaintiff has suffered damages as a direct result of the American Power Entities' interference with Church and Plaintiff's contractual relationship. The American Power Entities'

interference has damaged Plaintiff's ability to compete, including against the American Power Entities, unfairly and wrongfully provided the American Power Entities with unearned competitive advantages, and damaged Plaintiff's position in the electricity generation market.

238.    Plaintiff will continue to suffer damages as well from the American Power Entities' interference given that the American Power Entities' interference resulted in their employment of Church in violation of the terms of the Non-Competition, Non-Solicitation, and Non-Interference Agreement.

239.    Plaintiff has no adequate remedy at law. Plaintiff has suffered irreparable harm and will continue to suffer irreparable injuries unless the American Power Entities are enjoined from employing or contracting with Church in violation of the terms of the Non-Competition, Non-Solicitation, and Non-Interference Agreement.

WHEREFORE, Plaintiff requests judgment in its favor and against the American Power Entities for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, costs, and any further relief that this Court deems just and proper.

## COUNT XVIII:

## BREACH OF FIDUCIARY DUTIES

### Brought Against Defendant Church

240.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

241.    As the Chief Executive Officer and board member of Plaintiff, Church had fiduciary duties to Plaintiff and its members, including the duties of loyalty, care, and good faith.

242.     Church violated these fiduciary duties by working for the American Power Entities and by advancing their interests, to Plaintiff's detriment, while employed as the Chief Executive Officer and board member of Plaintiff.

243.     Church violated these duties by failing to treat Plaintiff's confidential and proprietary information, including trade secrets, as confidential, misappropriating that information, and providing that information to the American Power Entities.

244.     Church also violated these duties by lying to Plaintiff about the basis for charges that Church made to a corporate credit card. Church had a corporate credit card and was only authorized to charge legitimate corporate expenses to the card. Despite this, Church falsely claimed that numerous charges were for Plaintiff's official business despite knowing that they were not. Plaintiff paid for these charges because of Church's false representation that they were for legitimate corporate purposes. Attached as **Exhibit L** and incorporated herein is a chart that provides: (1) each illegitimate expense that Church charged to the corporate credit card; (2) the nature or type of expense; (3) the merchant or seller associated with the expense; (4) the date on which Church charged the expense to the corporate credit card; and (5) the amount of each charge.

245.     Plaintiff has been damaged by Church's illegitimate charges because Plaintiff expended money to cover the charges in reliance on Church's false characterizations.

246.     Plaintiff has suffered damages and will continue to suffer damages as a direct result of Church's breaches of his fiduciary duties.

WHEREFORE, Plaintiff requests judgment in its favor and against the Church for damages, pre-judgment and post-judgment interest, costs, and any further relief that this Court deems just and proper.

**COUNT XIX:**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES**

**Brought Against the American Power Entities**

247.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

248.    As the Chief Executive Officer and board member of Plaintiff, Church had fiduciary duties to Plaintiff and its members, including the duties of loyalty, care, and good faith.

249.    The American Power Entities were fully aware that Church was Plaintiff's Chief Executive Officer and board member when they hired him to work for them. The American Power Entities were fully aware that Church did not depart Plaintiff upon the American Power Entities hiring of Church and knew that Church was working for both companies concurrently between the date that the American Power Entities hired Church and the date that Plaintiff fired him.

250.    Church violated his fiduciary duties to Plaintiff and its members by working for the American Power Entities and by advancing their interests, to Plaintiff's detriment, while employed as the Chief Executive Officer and board member of Plaintiff.

251.    Church also violated these duties to Plaintiff and its members by failing to treat Plaintiff's confidential and proprietary information, including trade secrets, as confidential, misappropriating that information, and providing that information to the American Power Entities.

252.    The American Power Entities aided and abetted these breaches of Church's fiduciary duties and did so by providing Church with substantial assistance and encouragement of Church's violations of his breaches. Upon information and belief, the American Power Entities provided substantial assistance by encouraging Church to work for both companies concurrently.

253.    Plaintiff has suffered damages will continue to suffer damages as a direct result of Church's breach of his fiduciary duties and the American Power Companies' aiding and abetting of Church's breach.

WHEREFORE, Plaintiff requests judgment in its favor and against the American Power Entities for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, costs, and any further relief that this Court deems just and proper.

## COUNT XX:

## CYBERSQUATTING UNDER THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT, 15 U.S.C. § 1125(d)

### Brought Against Defendants Javan and the American Power Entities

254.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

255.    Plaintiff has repeatedly registered "APR Energy" with the United States Patent and Trademark Office and "APR Energy" constitutes Plaintiff's registered mark. *See* Ex. K (Plaintiff's registrations with the U.S. Patent and Trademark Office).

256.    Plaintiff's four U.S. Registrations of Plaintiff's Mark constitute, as a matter of federal law, "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein . . . ." 15 U.S.C. § 1115(a); *see also* Ex. K.

257.    The goods and services specified in each of the U.S. registration include the goods and services over which the American Power Entities and Plaintiff compete and which the American Power Entities market, promote, and sell using the domain names apr.energy and

aprenew.com. Goods and services specified in the registrations include but are not limited to: "Installation and maintenance of rapidly deployable turnkey power generation equipment" (Reg. Nos. 4145502 and 3654109); "Installation and maintenance of power generation equipment" and "Utility services, namely, transmission of electricity and electric power; fast-track capacity power and electricity services, namely, providing standby electricity and electric power" (Reg. Nos. 4330688 and 4534470). *See id.*

258.    Plaintiff also possesses common law trademark rights in Plaintiff's Mark given that it has used it since July 1, 2008.

259.    The American Power Entities and Javan registered apr.energy and aprenew.com on October 29, 2021, over 13 years after Plaintiff first began using the APR Energy mark. The American Power Entities and Javan registered apr.energy and aprenew.com as the American Power Entities' websites and trafficked in and used, and continue to traffic in and use, the apr.energy and aprenew.com domain names.

260.    Plaintiff's Mark was distinctive at the time of the American Power Entities and Javan's registration of apr.energy and aprenew.com. It is distinctive because it has become associated, over more than a decade and a half, with Plaintiff's products and services. The name APR Energy has a primary significance in the public mind with Plaintiff, and Plaintiff has used the APR Energy name continuously and substantially exclusively for longer than five years. Moreover, APR is, and has always been, the dominant portion of Plaintiff's Mark and is recognized as such by customers and the public.

261.    Apr.energy is identical or confusingly similar to APR Energy. It consists of the exact same letters and name, separated only by a period. It also begins with "Apr," which is, and

has always been, the dominant portion of Plaintiff's Mark and is recognized as such by customers and the public.

262.    Javan and the American Power Entities registered apr.energy and aprenew.com using an agent and proxy, Domains by Proxy, LLC, which is a company based in Arizona that registers a domain on behalf of its true owner in order to assist the true owner in shielding its identity. Javan and the American Power Entities are the true or *de facto* registrants of apr.energy and aprenew.com, or, in the language of 15 U.S.C. § 1115(a), the authorized licensees of Domains by Proxy, LLC, the official, *de jure* registrants of the domain.

263.    Aprenew.com is confusingly similar to Plaintiff's Mark, as would be any domain name starting with "apr." "Apr" is, and has always been, the dominant portion of Plaintiff's Mark and is recognized as such by customers and the public.

264.    Javan and the American Power Entities registered apr.energy and aprenew.com with a bad faith intent to profit from Plaintiff's Mark and have continued to have a bad faith intent to profit from Plaintiff's Mark in continuing to own, use, manage, operate, and promote apr.energy and aprenew.com. Javan and the American Power Entities registered and continue to use the domains apr.energy and aprenew.com for two purposes. First, Javan and American Power Entities registered and continue to use the domains apr.energy and aprenew.com as leverage to get Plaintiff to pay money to the American Power Entities, or otherwise provide the American Power Entities with things of value, in order for Plaintiff to secure ownership over apr.energy and aprenew.com from the American Power Entities and protect its intellectual property rights from the American Power Entities. Second, Javan and the American Power Entities registered apr.energy and aprenew.com to bolster their own business and competitive position by confusing consumers in the electricity generation market about the association between the American Power Entities and

Plaintiff. Put differently, Javan and the American Power Entities have used, and are continuing to use, the apr.energy and aprenew.com domains to divert customers from the website of Plaintiff, aprenergy.com, to the websites of the American Power Entities, apr.energy and aprenew.com, to order to divert business from Plaintiff.

265.    Pursuant to 15 U.S.C. § 1125(d)(1)(B), Javan and the American Power Entities' bad faith is also established for reasons that include, but are not limited to, the following: (1) Plaintiff has trademark or other intellectual property rights in the domain names apr.energy and aprenew.com; (2) the domain name "apr.energy" constitutes the legal name of Plaintiff and is otherwise commonly used to identify Plaintiff; (3) Plaintiff used "APR Energy" in connection with the bona fide offering of its goods and services for approximately 13 years before the date that Javan and the American Power Entities registered the apr.energy and aprenew.com domains; (4) Javan and the American Power Entities have no bona fide noncommercial or fair use of Plaintiff's Mark in any site accessible under the apr.energy and aprenew.com domain names; (5) Javan and the American Power Entities have intended "to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site," § 1125(d)(1)(B)(i)(V); and (6) Javan and the American Power Entities provided material and misleading false contact information when applying for the registrations of apr.energy and aprenew.com by using a proxy, Domains by Proxy, LLC, to register the domains, all in an attempt to hide their identity as the true owners of the infringing domains and prevent Plaintiff and others from identifying them as the cybersquatters.

266.    Javan and the American Power Entities also registered apr.energy and aprenew.com in reckless disregard of Plaintiff's trademark and intellectual property. Javan and the American Power Entities were aware, or should have been aware, of Plaintiff, Plaintiff's long use of APR Energy, Plaintiff's trademark rights in APR Energy, the similarities between APR Energy, apr.energy, aprenew.com, and Plaintiff's own website, aprenergy.com, and that the registration and use of apr.energy and aprenew.com would dilute Plaintiff's goodwill and divert customers from Plaintiff or the aprenergy.com website.

267.    Javan and the American Power Entities have, and are continuing to, profit off of the goodwill of Plaintiff, the owner of the APR Energy trademark, and in doing so, have diluted the goodwill of Plaintiff.

268.    Javan and the American Power Entities' acts of cybersquatting have therefore been committed with the intent to cause confusion, mistake, and to deceive, and were otherwise deliberate and/or in bad faith. Such intentional and willful conduct makes this an exceptional case.

269.    Plaintiff has suffered and will continue to suffer from Javan and the American Power Entities' ownership and use of apr.energy and aprenew.com. Plaintiff has lost, and will continue to lose, goodwill from Javan and the American Power Entities' ownership and use of apr.energy and aprenew.com and customers and the public are being diverted from Plaintiff and aprenergy.com to Javan, American Power Entities, and apr.energy and aprenew.com.

270.    Plaintiff has no adequate remedy at law. Plaintiff has suffered irreparable harm and will continue to suffer irreparable injuries unless Javan and the American Power Entities are enjoined from continuing to exploit, use, and cybersquat upon apr.energy, aprenew.com, or any other domain name controlled by any Defendant that begins with the three-letter combination "apr."

271.    Plaintiff is entitled to injunctive relief in accordance with 15 U.S.C. § 1116(a).

272.    Plaintiff is entitled to recover profits and damages as set forth in 15 U.S.C. § 1117(a).

273.    Plaintiff is entitled to recover its attorneys' fees pursuant to 15 U.S.C. § 1117(a).

274.    As set forth in 15 U.S.C. §1125(c), the Court may order apr.energy, aprenew.com, or any other domain name controlled by any Defendant that begins with the three-letter combination "apr" to be transferred to Plaintiff. In the alternative, the Court may order the forfeiture or cancellation of apr.energy, aprenew.com, or any other domain name controlled by any Defendant that begins with the three-letter combination "apr."

WHEREFORE, Plaintiff requests judgment in its favor and against Defendants for damages, temporary and permanent injunctive relief, pre-judgment and post-judgment interest, attorney's fees and costs, the transfer of apr.energy, aprenew.com, and any other domain name controlled by any Defendant that begins with the three-letter combination "apr" to the ownership and possession of Plaintiff or the forfeiture or cancellation of apr.energy, aprenew.com, and any other domain name controlled by any Defendant that begins with the three-letter combination "apr," and any further relief that this Court deems just and proper.

## COUNT XXI:

## FRAUDULENT MISREPRESENTATION

### Against Defendant Church

275.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

276.    As the Chief Executive Officer and board member of Plaintiff, Church had a corporate credit card, to which he was only authorized to charge expenses that were directly related to Plaintiff's official business.

277.    Plaintiff covered expenses that Church charged to Plaintiff's credit card because of Church's representation that those charges were related to Plaintiff's official business.

278.    Church lied. Church repeatedly mischaracterized these expenses as related to Plaintiff's official business when he knew that they were not. He also knew that his mischaracterizations were material because Plaintiff would refuse to cover charges that were not related to its business.

279.    Church's lies and misrepresentations about the nature of his charges were intentional. He made his misrepresentations with the intent of inducing Plaintiff to act upon them by covering his illegitimate charges. Plaintiff paid for these charges because Church led Plaintiff to believe that they were for legitimate corporate purposes.

280.    Attached as **Exhibit L** and incorporated herein is a chart that provides: (1) each illegitimate expense that Church charged to the corporate credit card; (2) the nature or type of expense; (3) the merchant or seller associated with the expense; (4) the date on which Church charged the expense to the corporate credit card; and (5) the amount of each charge.

281.    Plaintiff has been damaged by Church's false misrepresentations because it expended money to cover Church's illegitimate expenses, in reliance on Church's false representations.

WHEREFORE, Plaintiff requests judgment in its favor and against Church for damages, costs, pre-judgment and post-judgment interest, costs, and any further relief that this Court deems just and proper.

## COUNT XXII:

## UNJUST ENRICHMENT

### Against Defendant Church

282.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 106.

283.    As the Chief Executive Officer and board member of Plaintiff, Church had a corporate credit card, to which he was only authorized to charge expenses that were directly related to Plaintiff's official business.

284.    Plaintiff covered expenses that Church charged to Plaintiff's credit card because of Church's representation that those charges were related to Plaintiff's official business.

285.    Church lied. Church repeatedly mischaracterized these expenses as related to official Plaintiff business when he knew that they were not. He also knew that his mischaracterizations were material because Plaintiff would refuse to cover expenses that were not related to Plaintiff's business.

286.    Church's lies and misrepresentations about the nature of his charges were intentional. He made his misrepresentations with the intent of inducing Plaintiff to act upon them by covering his illegitimate charges. Plaintiff paid for these charges because Church led Plaintiff to believe that they were for legitimate corporate purposes. By covering Church's illegitimate expenses, Plaintiff conferred a benefit on Church. Church has knowledge of this benefit.

287.    Church voluntarily accepted Plaintiff's covering of his corporate credit card charges and retained and continues to retain the funds that he otherwise would have expended had he paid for his personal, non-corporate expenses himself.

288.     Attached as **Exhibit L** and incorporated herein is a chart that provides: (1) each illegitimate expense that Church charged to the corporate credit card; (2) the nature or type of expense; (3) the merchant or seller associated with the expense; (4) the date on which Church charged the expense to the corporate credit card; and (5) the amount for each specific charge or expense.

289.     Plaintiff has been damaged because it expended money to cover Church's illegitimate charges, in reliance on Church's false representations.

290.     Under these circumstances, it would be inequitable for Church to retain the value of his false charges to Plaintiff's credit card without paying that value back to Plaintiff.

291.     As the Chief Executive Officer of Plaintiff, Church also received a salary for devoting his time and energies on behalf of Plaintiff.

292.     Church, however, lied regarding how he was using his time and on whose behalf he was working. Church's employment as Plaintiff's CEO overlapped with his employment at the American Power Entities from no later than early November 2023, when the American Power Entities hired Church, to January 23, 2024, the date that Plaintiff fired him. During that time period, rather than devote his time to Plaintiff, Church split his time between Plaintiff and its competitor.

293.     During his time working for both Plaintiff and the American Power Entities, Church misrepresented the nature of his work to Plaintiff, which believed that Church was acting as its Chief Executive Officer, and not as a double-agent.

294.     Church's misrepresentations and clandestine double-dealing unjustly enriched him. He collected a salary from Plaintiff despite spending much of his time not working for Plaintiff, but for a competitor. He made his material misrepresentations with the intention of inducing

Plaintiff to continue paying him, which it did until it discovered that Church was being simultaneously employed by the American Power Entities.

295.    Under these circumstances, it would be inequitable for Church to retain either the value of his salary during the period of his double-dealing or the portion of his salary commensurate with the time he spent working during that period for the American Power Entities.

WHEREFORE, Plaintiff requests judgment in its favor and against Church for damages, costs, pre-judgment and post-judgment interest, costs, and any further relief that this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims so triable.


## VERIFICATION BY APR ENERGY

Under penalty of perjury, I declare that I have read the foregoing Verified Complaint and the facts alleged therein are true and correct to the best of my knowledge and belief.

Dated this 15th day of February, 2024.


*/s/Joseph DiCamillo*
Joseph DiCamillo
General Counsel, APR Energy, LLC

70

Dated: February 15, 2024.

Respectfully submitted,

**NELSON MULLINS**
*Counsel for APR Energy, LLC*


*/s/Mark F. Raymond*
**Mark F. Raymond**
Florida Bar No. 373397
mark.raymond@nelsonmullins.com
**Andrew J. Fuller**
Florida Bar No. 1021164
andrew.fuller@nelsonmullins.com
2 S. Biscayne Blvd.
One Biscayne Tower, 21st Floor
Miami, Florida 33131
Telephone No. 305.373.9425
Facsimile No. 305.373.9443

**Craig N. Killen**
*Pro Hac Vice Application Forthcoming*
North Carolina Bar No. 43980
craig.killen@nelsonmullins.com
One Wells Fargo Center
301 South College Street, 23rd Floor
Charlotte, NC 28202
Telephone No. 704.417.3127
Facsimile No. 704.377.4814